UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Newport News Division

OLUWASEGUN OGUN,

       Petitioner,

   v.                          CIVIL ACTION NO. 4:13cv91
                             [ORIGINAL CRIMINAL NO. 4:12cr4]

UNITED STATES OF AMERICA,

       Respondent.

## MEMORANDUM ORDER

This matter comes before the court on the Petitioner's pro se[1] Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct ("Motion for Habeas Corpus"), filed on June 24, 2013. ECF No. 94.

On the same day the Petitioner filed the Motion for Habeas Corpus, he filed a Motion for Extension of Time to file a Memorandum in Support of his Motion for Habeas Corpus, ECF No. 95, which the court granted on June 25, 2013. ECF No. 96. The Petitioner filed his Memorandum in Support on August 12, 2013.[2]

---

[1] Because the Petitioner is proceeding pro se, the court liberally construes the Motion. See Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978).

[2] The Petitioner made numerous filings between June 25, 2013, and November 16, 2013. On August 21, 2013, the court ordered the United States to file responsive pleadings to the Petitioner's various motions, and held in abeyance the Petitioner's Motion for Habeas Corpus pending resolution of those motions. See ECF Nos. 100, 102, and 108. Those motions were subsequently resolved. See ECF Nos. 101 and 115.

ECF No. 107. On September 24, 2013, the court ordered the Petitioner to file Supplemental Briefings in support of his Motion for Habeas Corpus, ECF No. 115, which the Petitioner filed on October 28, 2013. ECF No. 119. On November 6, 2013,[3] the court ordered the United States to file responsive pleadings to the Petitioner's Motion for Habeas Corpus.[4] ECF No. 120. On December 16, 2013, the Petitioner filed a Motion for Abeyance "to allow the Petitioner to respond to govornments [sic] up-coming response to petitioner's § 2255 motion."[5] Mot. for Abeyance at 1, ECF No. 123. On January 7, 2014, the United

---

[3] Former defense counsel for the Petitioner was ordered to respond to the Petitioner's allegations in his Motion for Habeas Corpus and Supplemental Briefing. On January 6, 2014, counsel for the Petitioner responded to the Petitioner's allegations in a sworn affidavit. See ECF No. 124.

[4] The Petitioner's Motion for Habeas Corpus alleges four (4) grounds for relief. See ECF No. 94. His Memorandum in Support alleges four (4) additional grounds for relief. See ECF No. 107. Additionally, the Petitioner's Supplemental Briefing filed on October 28, 2013, contains allegations of exculpatory material which he contends was not provided to him. See ECF No. 119. The Supplemental Briefing was filed subject to defect; however, the court **LIFTS** the defect. The United States was ordered to respond to all allegations and grounds for relief.
    In a "Letter of Concern" filed on December 2, 2013, the Petitioner seeks to further supplement his Motion for Habeas Corpus. See ECF No. 122. The court will construe this as a Motion to Supplement, and will consider the substance of this letter.

[5] The court **FINDS** the Motion for Abeyance **MOOT** because the Petitioner at that juncture was not required to respond.

States filed a Motion for Extension of Time to file its Response to the Motion for Habeas Corpus, ECF No. 126, and the court granted the motion on that same day. ECF No. 127. The Petitioner then filed a "Letter of Concern," ECF No. 128, on January 8, 2014.[6] On January 15, 2014, the United States filed a

---

[6] In the "Letter of Concern," the Petitioner requests the court to order the Petitioner's unit counselor at the Petitioner's place of imprisonment to "turn over the discs to the court to test and determine the validity of the video and audio discs," Letter at 1, and requests the court to order the United States to "turn over the photo stills and video surveillance of the subway surveillance robbery, coldstone & creamery robbery, and the white Lincoln navigator (suv) w/license plate number showing as documented in police report." Id. at 2. The Petitioner alleges that this video surveillance material constitutes exculpatory material pursuant to Brady v. Maryland, 373 U.S. 83, 87 (1963).

The Petitioner's requests pursuant to Brady are inappropriate as the Brady right is not a post-conviction right. See District Attorney's Office for Third Judicial District v. Osborne, 557 U.S. 52, 68 (2009). "A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course. Leave of court is required to invoke discovery in a § 2255 proceeding, and may be granted only for 'good cause.'" Adionser v. United States, No. 2:03cr81-1, 2006 WL 2709694, at *7 (E.D. Va. Sept. 21, 2006) (citing Rule 6(a) of the Rules Governing § 2255 Cases). The Petitioner bears the burden of demonstrating good cause and must allege some material fact to trigger the court's discretion to grant leave for discovery. Id. However, discovery is not required if the habeas petition plainly warrants dismissal. Id.

In the instant case, the Petitioner has not made the requisite "good cause" showing required for the court to compel the production of the requested materials. The Petitioner simply argues that "neither video disc contained any surveillance of the robberies in which petitioner was induced to pleading guilty to." Letter at 2. However, Petitioner's guilty plea, signed statement of facts, positive witness identification, and evidence found all conclusively rebut his implied assertion of

second Motion for Extension of Time to file its Response to the Motion for Habeas Corpus, ECF No. 131, and the court granted the motion on January 17, 2014. ECF No. 132.

On February 4, 2014, the United States filed a response under seal to the Petitioner's Motion for Habeas Corpus, with a copy sent to the Petitioner. ECF No. 137. The Petitioner then filed a "Motion for Extension of Time to File Traverse," ECF No. 138, which the court granted on April 2, 2014. ECF No. 142. On June 5, 2014, the Petitioner filed his reply. ECF No. 145.[7] Consequently, the Motion for Habeas Corpus is now ripe for review.

## I. Legal Standard for § 2255 Petitions

A prisoner may challenge a sentence imposed by a federal court if: (1) the sentence violates the Constitution or laws of the United States; (2) the sentencing court lacked jurisdiction

---

innocence in his "Letter of Concern." Consequently, the Petitioner's requests in his "Letter of Concern" are **DENIED**.

On January 31, 2014, the Petitioner filed another "Letter of Concern," ECF No. 133, in which he reiterates the same arguments of his "Letter of Concern" filed on January 8, 2014. For the reasons stated above, the requests stated in the "Letter of Concern" filed on January 31, 2014, are also **DENIED**.

The Petitioner is **ADVISED** that any future "Letter of Concern," wherein the Petitioner seeks any form of relief, must be properly titled as a Motion, and filed with the court as such.

[7] The Petitioner refers to his reply as a "Motion for Traverse in Opposition to Government(s) Response to Petitioner Ogun(s) Motion to Set Aside, the Conviction and Sentence, Pursuant to 28 USC § 2255" ("Motion for Traverse").

to impose the sentence; (3) the sentence exceeds the statutory maximum; or (4) the sentence "is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). A sentence is "otherwise subject to collateral attack" if a petitioner shows that the proceedings suffered from "'a fundamental defect which inherently results in a complete miscarriage of justice.'" United States v. Addonizio, 442 U.S. 178, 185 (1979) (quoting Hill v. United States, 368 U.S. 424, 428 (1962)).

The prisoner bears the burden of proving one of those grounds by a preponderance of the evidence. See Miller v. United States, 261 F.2d 546, 547 (4th Cir. 1958). If he satisfies that burden, the court may vacate, set aside, or correct the sentence. 28 U.S.C. § 2255(b). If the motion, however, when viewed against the record, shows that the petitioner is entitled to no relief, the court may summarily deny the motion. Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

In cases where a petitioner claims to have received ineffective assistance of counsel as grounds for relief, a petitioner must show by a preponderance of the evidence that (1) the attorney's performance was seriously deficient; and (2) such deficient performance prejudiced the petitioner by undermining the reliability of the judgment against him. See Strickland v. Washington, 466 U.S. 668, 687 (1984).

5

To show deficient performance, counsel's actions or omissions must be measured against what "an objectively reasonable attorney would have done under the circumstances existing at the time of the representation." Savion v. Murray, 82 F.3d 593, 599 (4th Cir. 1996); see also Lawrence v. Branker, 517 F.3d 700, 708-09 (4th Cir. 2008). The court must attempt to "eliminate the distorting effects of hindsight," and instead "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689.

To demonstrate prejudice, a petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. In doing so, he "must demonstrate that the error worked to his 'actual and substantial disadvantage,' not merely that the error created a 'possibility of prejudice.'" Satcher v. Pruett, 126 F.3d 561, 572 (4th Cir. 1997) (quoting Murray v. Carrier, 477 U.S. 478, 494 (1986)). Because a petitioner must satisfy both parts of the test, a failure to carry the burden of proof as to one prong precludes relief and relieves the court of the duty to consider the other. Strickland, 466 U.S. at 700.

## II. Discussion

In his Motion for Habeas Corpus, Memorandum in Support, and Supplemental Briefing, the Petitioner alleges eight grounds for relief, consisting of five ineffective assistance of counsel claims, two prosecutorial misconduct claims, and a claim for relief under Alleyne v. United States, 133 S. Ct. 2151 (2013).[8] Each claim is considered in turn.

### A. Ground One: Ineffective Assistance of Counsel for Failure to Appeal

The Petitioner first argues that he received ineffective assistance of counsel because he allegedly asked his attorneys, Keith Kimball and Suzanne Katchmar, to file a notice of appeal, and they did not do so. Mem. in Supp. at 5; Mot. for Traverse at 2. In a sworn affidavit, counsel for the Petitioner rebut the assertion that the Petitioner instructed them to appeal. Aff. ¶¶ 3-5. In its response, the United States references the affidavit from Mr. Kimball and Ms. Katchmar stating that the Petitioner never asked them to file an appeal in this case. See Gov't's Resp. at 10.

The court will not dispose of this claim at this juncture. "[A]n attorney renders constitutionally ineffective assistance of counsel if he fails to follow his client's unequivocal

---

[8] See supra note 4 and accompanying text.

7

instruction to file a timely notice of appeal even though the defendant may have waived his right to challenge his conviction and sentence in the plea agreement." United States v. Poindexter, 492 F.3d 263, 265 (4th Cir. 2007).[9] The Petitioner did waive his appeal rights in Paragraph Six of the Plea Agreement filed in open court at the plea colloquy proceeding on March 22, 2012, and verified by the Petitioner under oath at this proceeding. See ECF No. 38. However, it is not clear from his Motion for Habeas Corpus and Memorandum in Support that he "unequivocally" instructed Mr. Kimball and Ms. Katchmar to pursue an appeal. Rather, in his Memorandum in Support, he asserts that "[p]rior to sentencing Petitioner requested trial counsel to make formal objections during the sentencing proceeding, and to file a notice of appeal." Mem. in Supp. at 5. Moreover, in his Motion for Traverse, the Petitioner merely states that he "requested counsel to file a notice of appeal and counsel declined to follow his clients [sic] request." Mot. for

---

[9] Other circuits have held that a petitioner cannot successfully claim ineffective assistance of counsel for failing to file an appeal where, as in this case, the petitioner waived his right to appeal in a plea agreement but failed to allege the agreement is unenforceable. See, e.g., Nunez v. United States, 546 F.3d 450, 456 (7th Cir. 2008). The Fourth Circuit, however, maintains that even without attacking the plea agreement itself, a petitioner can claim that counsel should have filed an appeal, despite the petitioner's waiver of his appeal rights. Poindexter, 492 F.3d at 265.

8

Traverse at 2. At that stage in the proceedings, there was no judgment, and so there would have been nothing to appeal.[10] See, e.g., Flanagan v. United States, 465 U.S. 259, 263 (1984) (citing Berman v. United States, 302 U.S. 211, 212 (1937)) ("In a criminal case the [final judgment] rule prohibits appellate review until conviction and imposition of sentence.").

In accordance with the duty to construe this pro se pleading liberally,[11] the court will permit the Petitioner to raise a factual issue with respect to this claim, if he can; the Petitioner must now unequivocally state, under oath, that he made such a request for appeal to Mr. Kimball and Ms. Katchmar, and describe the facts and circumstances of such request.[12] The Petitioner has thirty (30) days from the entry of this Memorandum Order to make this submission. The court holds in abeyance a final ruling on the claim in Ground One, until the

---

[10] In his Motion for Traverse, the Petitioner specifically references other instances which defense counsel should have appealed: 1) Petitioner "never viewed the discovery and was never disclosed any Brady material"; and 2) "detectives violated [the Petitioner's] Miranda rights when they initiated the interrogation . . . before mirandizing the defendant." Mot. for Traverse at 1-3.

[11] See supra note 1.

[12] The court is well-aware that the Petitioner filed his Motion for Habeas Corpus and Memorandum in Support "under penalty of perjury" stating that it was "true and correct." Mot. at 13; Mem. in Supp. at 24. However, as discussed above, his statements in the Motion for Habeas Corpus and Memorandum in Support were not clear, specific, and unequivocal on this claim.

Petitioner submits an affidavit as directed, or until the time granted to do so expires.

## B. Ground 2: Ineffective Assistance of Counsel for Failure to Review Discovery

The Petitioner next argues that his counsel "denied [him] a right to review the discovery material in order for [him] to make a knowingly and voluntary guilty plea." Mem. in Supp. at 9. He further contends that "but for counsel's error(s), [the Petitioner] would not have plead guilty and would have insisted on going to trial." Id. at 10. Specifically, the Petitioner argues that defense counsel failed to discuss the case with him, and failed to conduct discovery or an independent investigation of the facts and, as such, the Petitioner was deprived of his "constitutional right to assistance of counsel, rendering his guilty plea involuntary," id., and that "defense counsel never disclosed any discovery material to Petitioner in order for him to determine whether its [sic] in the best interest to proceed to trial or not." Id. at 6. The Petitioner also implies that he was in fear, under duress, and scared into pleading guilty,[13] and that "his mental facilities were so impaired when he pleaded, that he was incapable of full understanding of the charges

---

[13] The Petitioner states that "with the fear of receiving another consecutive 25 year term of imprisonment," that he pled guilty on the "promise of the government not to proceed on the Moneymart robbery, and also to reduce [his] sentence if he [pled] out . . . ." Mem. in Supp. at 11.

10

against him, of comprehending his constitutional rights and of realizing the consequences of his plea." Id. at 11 (quoting United States v. Truglio, 493 F.2d 574, 578 (4th Cir. 1974)).

Here, the Petitioner fails to show that his counsel's performance was deficient. The Petitioner centers most of his argument on an allegedly "impermissibly suggestive identification procedure" that he claims was implemented to positively identify him and his codefendant, Chanel Elease Faison, see id. at 10, and how defense counsel should have independently investigated this "impermissibly suggestive identification procedure." Id. He also wishes to discredit three witnesses who positively identified him and his codefendant as the suspects who committed the armed robberies using the allegedly "impermissibly suggestive identification procedure". Id.

In this case, there was significant other evidence to support the Petitioner's involvement in the armed robberies, aside from the allegedly "impermissibly suggestive identification procedure." This other evidence includes the Petitioner's own confession[14] to the crimes, the fruits of the

---

[14] Following Miranda warnings and a waiver, the Petitioner was interviewed and admitted to robbing the Cold Stone Creamery, the Subway Restaurant, and the Quaker Steak & Lube. See Statement of Facts ¶¶ 3, 9, 16.

crimes found in his hotel room, his signed statement of facts, and his plea agreement. See Statement of Facts, ECF No. 40,[15] Plea Agreement, ECF No. 39.

Moreover, pursuant to the Discovery Order, ECF No. 12, defense counsel was provided with 1500 pages of discovery in the case. Gov't's Resp. at 11. Defense counsel's sworn affidavit makes clear that defense counsel did, in fact, review the discovery materials in detail with the Petitioner, including evidence that would have been presented against him in the event of a trial, prior to his guilty plea. See Aff. ¶ 6. As such, his claim fails under the first prong of the Strickland test. See Strickland, 466 U.S. at 687. Even if this court were to assume that defense counsel did not review the discovery materials with the Petitioner, his claim fails under the second prong of the Strickland test as well. Id. at 700.

The Petitioner further argues that had he been allowed a chance to discredit particular eyewitnesses, he would not have pleaded guilty and would have insisted on going to trial. See Mem. in Supp. at 10. As noted above, however, there was an overwhelming amount of other evidence arrayed against the Petitioner, including the Petitioner's own confession and multiple witnesses who had viewed the video surveillance from

---

[15] The Statement of Facts was filed at the plea colloquy hearing, and agreed to by the Petitioner under oath. See ECF No. 38.

12

the Subway robbery, and who had viewed the Petitioner's uncovered face exiting the restaurant immediately after the Quaker Steak & Lube robbery, and who were willing to identify the Petitioner at trial. See Statement of Facts ¶ 8. Consequently, the Petitioner has not shown that he was prejudiced, and so his claim also fails under the second prong of Strickland. 466 U.S. at 693 ("It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding. Virtually every act or omission of counsel would meet that test, and not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding." (citations omitted)).

Finally, the Petitioner alleges that his guilty plea was involuntary. Specifically, he argues that "counsel's failure to discuss the case with Petitioner and without conducting any discovery or independent investigation of the facts deprived [him] of his constitutional right to assistance of counsel, rendering his plea involuntary." Mem. in Supp. at 10.

"Where the defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was 'within the range of competence demanded on attorneys in

criminal cases.'" Hill v. Lockhart, 474 U.S. 52, 59 (1985) (quoting McMann v. Richardson, 397 U.S. 759, 771 (1973)). Thus, the two-part Strickland test also applies to challenges to guilty pleas based on ineffective assistance of counsel. Id.

In the instant case, as stated above, the Petitioner had the opportunity and did review the discovery materials with defense counsel prior to entering his guilty plea, to include evidence that would have been presented against him in the event of a trial. Additionally, defense counsel thoroughly reviewed the plea agreement with the Petitioner "paragraph by paragraph." Aff. ¶ 3. Moreover, the Petitioner's plea agreement was entered pursuant to Rule 11(c)(1)(C), whereby the Petitioner was given a favorable sentence on Count One, and to which he agreed to plead. See Plea Agreement ¶ 5; Gov't's Resp. at 11. Additionally, nothing in the record suggests that the court, at the time of the Petitioner's plea colloquy, did not fully comply with Federal Rule of Criminal Procedure 11[16] in accepting his plea, and that the Petitioner did not have full advice of counsel. See Guilty Felony Minutes, ECF No. 38.

---

[16] Federal Rule of Criminal Procedure 11 states that "before accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open court and determine that the plea is voluntary and did not result from force, threats, or promises (other than promises in a plea agreement)."

As such, the Petitioner fails to prove that defense counsel's performance was "seriously deficient," or that he was prejudiced in any way by defense counsel's performance. Thus, he fails to satisfy both prongs of the Strickland test. Moreover, the Petitioner offers no "credible evidence that that his plea was not knowing or otherwise involuntary." United States v. Alvanez, 368 F. App'x 333, 334 (4th Cir. 2009). As such, the Petitioner offers no proof, other than his personal beliefs, that his guilty plea was involuntary. Consequently, the Petitioner's claim of ineffective assistance of counsel as it relates to the voluntariness of his guilty plea fails under the both prongs of the Strickland test. See Strickland, 466 U.S. at 687.

## C. Grounds Three and Four: Ineffective Assistance of Counsel for Failure to Move to Suppress Evidence

The Petitioner next argues that he received ineffective assistance of counsel because his attorneys did not file a motion to suppress witness statements "alleging him as one of the masked suspects in the surveillance video." Mem. in Supp. at 14. The Petitioner alleges that the witnesses' statements "that Petitioner and Ms. Faison had the same walk pattern as the 'masked suspects' was unduly suggestive," and likely to rise to the level of "mis-identification." Id. The Petitioner argues that his attorneys should have recognized that "the facts

15

support a motion to suppress," [and that] failure to make such a motion [constituted] ineffective assistance of counsel." Id. at 15.

There is nothing in the record to support the Petitioner's claim. In fact, the Petitioner fully confessed to the offenses following Miranda warnings and a waiver. See Statement of Facts ¶¶ 3, 9, 16. Moreover, he identified himself in the video/video still photographs of the robberies, see Aff. ¶ 13, and signed and stipulated to the statement of facts filed in open court on March 22, 2012, during his plea colloquy. See generally Statement of Facts. With no facts in the record to support a motion to suppress, it was not unreasonable for the Petitioner's counsel to not file such a motion. Simply put, counsel for the Petitioner could not have made a motion to suppress with no knowledge of any facts that could support such a motion. Therefore, it was reasonable for defense counsel not to move to suppress the witnesses' statements, and the Petitioner has failed to demonstrate that his attorneys' performance was deficient. This failure precludes relief under the first prong of the Strickland test. See Strickland, 466 U.S. at 687.

The Petitioner next argues that defense counsel was ineffective for failing to file a motion to suppress his own statements. Specifically, he contends that officers interrogated

him "without properly reading him his Mranda [sic] rights," and that he was "co-erced [sic] and forced into making specified statements that detectives needed to close their case." Mem. in Supp. at 17.

There is nothing in the record to support the Petitioner's claim. The Petitioner makes no reference to the record or to any specific conversations with defense counsel wherein he informed either the court or defense counsel that he was coerced into making any particular statements. See Aff.¶ 11. Moreover, defense counsel reviewed the contents of the interrogation, which revealed a "valid Miranda waiver." Id. ¶ 10. Defense counsel also "saw no evidence for a good basis to challenge his statements raising an argument that they were involuntary." Id. Despite the Petitioner's numerous appearances before the court, he never voiced the allegations that he now makes. Consequently, the Petitioner's claim for ineffective assistance of counsel for failure to suppress his own statements fails under the first prong of the Strickland test. See Strickland, 466 U.S. at 687.

### D. Ground Five: Ineffective Assistance of Counsel for Failure to Challenge the Government's Proof of the Hobbs Act Conspiracy

Next, the Petitioner alleges in his Memorandum in Support that he received ineffective assistance of counsel when "[Mr. Kimball] implicated the Petitioner [in the conspiracy] when [Mr. Kimball] filed a Motion to Dismiss counts one through seven of

17

Petitioner's indictment due to lack of federal jurisdiction." Mem. in Supp. at 19. The Petitioner contends that "the evidence did not prove a single conspiracy . . . . ." Id. The Petitioner goes on to make additional serious allegations, including that defense counsel "disregarded his actual innocence claim," and that his confession to the robberies was coerced, all of which have nothing to do with the Hobbs Act conspiracy claim. The Petitioner's claim lacks merit.

On February 16, 2012, defense counsel filed a Motion to Dismiss Counts One through Seven of the Indictment for lack of federal jurisdiction. See Mot. to Dismiss, ECF No. 21. In the Motion to Dismiss, "defense counsel did not raise the issue of the government's failure to prove the Hobbs Conspiracy because the indictment sufficiently charged a conspiracy." Aff. ¶ 15. Rather, defense counsel argued that "the court lacked jurisdiction over the indictment because the conduct was directed toward individuals and there was no indication that interstate commerce was affected by the charged robberies." Id. ¶ 14. On March 16, 2012, the court denied the Motion to Dismiss holding that "[t]he Indictment allege[d] violations of the Hobbs Act sufficient to avoid dismissal on jurisdictional grounds by specifying the connection to interstate commerce of Cold Stone Creamery, Subway, and Quaker Steak & Lube." Order, ECF No. 28

("The Indictment not only alleges offenses against individuals but also against the three restaurants by alleging, inter alia, that Defendant Ogun directed the employees to remove currency from the restaurants' safes."); see also Indictment, ECF No. 1. The issue of whether the offenses constituted a Hobbs Act Conspiracy was well settled before the Petitioner pled guilty. Thus, his statements that "the evidence was insufficient and could not prove that [he and Ms. Faison] conspired to rob the Subway restaurant and Cold Stone Creamery," and that the "evidence could not prove that [he and Ms. Faison] were the actual culprits," Mem. in Supp. at 19-20, are unfounded and cannot serve to overcome the fact that he confessed to all three armed robberies, and stipulated to the offenses in the signed statement of facts. See Statement of Facts ¶¶ 3, 9, 16. Moreover, his statements asserting that "police lab reports came back inconclusive and found not a single trace of finger prints or DNA at the crime scenes belonging to [him]," and "that neither victims of the Subway or Cold Stone Creamery restaurants could positively identify [him]" also cannot negate the fact that he confessed to all three armed robberies. Consequently, the Petitioner's claim for ineffective assistance of counsel for "failing to raise issue of government's failure to prove a Hobbs

Act Conspiracy" fails under the first prong of the <u>Strickland</u> test. <u>See</u> <u>Strickland</u>, 466 U.S. at 687.

### E. Ground Six: Prosecutorial Misconduct for Failure to Disclose Brady Material

The Petitioner next argues that the United States engaged in "prosecutorial misconduct" because it allegedly failed to disclose <u>Brady</u> material[17] and, as a result, he was deprived of due process. Mem. in Supp. at 7. Specifically, he alleges that "he was denied the opportunity to view the photo spread in order to challenge the arranged identification procedure and whether it was admissible." <u>Id.</u> at 7-8. In support, the Petitioner contends that the "prosecution's failure to disclose requested information which the defense could have used to conduct an

---

[17] In his Memorandum in Support, the Petitioner lists the <u>Brady</u> material to include only the "photo spread;" however, in his Motion for Traverse, the Petitioner lists the <u>Brady</u> material to also include the video surveillance and photo stills. Because the Petitioner has not made the requisite showing to compel the production of the video surveillance and photo stills as noted <u>supra</u> note 6, the court will consider the <u>Brady</u> material as encompassing only the "photo spread" for purposes of addressing his Motion for Habeas Corpus.

On July 15, 2013, the Petitioner filed a motion requesting the alleged <u>Brady</u> material consisting of the "photo spread." ECF No. 100. The court denied the motion because the Petitioner had not made the requisite showing that the "photo spread" was exculpatory. ECF No. 101. On July 29, 2013, ECF No. 102, the Petitioner made a preliminary showing that he was entitled to the "photo spread," and by Order of August 21, 2013, the court ordered the United States to respond to the Petitioner's request. ECF No. 108. On September 20, 2013, the United States responded, and provided a sealed copy of the "photo spread" to the Petitioner. ECF No. 114.

effective defense impaired [his] right to confront adverse witnesses." Id. at 8-9. The Petitioner contends that this alleged Brady material is "exculpatory and should have been disclosed to him before he pled guilty." Supplemental Br. at 1. In the same claim, the Petitioner argues that defense counsel was "ineffective under Strickland v. Washington for failing to file a motion under Brady v. Maryland" and because "counsel failed to discover the photo spread on their own or present comparable and available expert testimony to challenge the evidence." Mem. in Supp. at 8.

The United States argues that the "photo spread" was not exculpatory material pursuant to Brady because the photo spread implicated the Petitioner. See Gov't's Resp. at 19-20. Further, the United States argues that the failure to disclose the photo spread where the Defendant was identified by a witness was an inadvertent Federal Rule of Criminal Procedure 16 violation, and not a Brady violation.[18] Id. at 19, n.2. Moreover, the United States argues that the Petitioner's own confession following the execution of the search warrant, and evidence found at the

---

[18] Federal Rule of Criminal Procedure 16 (E) provides that upon the Defendant's request, the government must permit the defendant to inspect and to copy or photograph . . . photographs, tangible objects . . . if the item is within the government's possession, custody . . . and 1) the item is material to preparing the defense, 2) the government intends to use the item in its case-in-chief at trial . . . ."

Petitioner's hotel room preclude the Petitioner's ability to meet his burden under Brady. See Gov't's Resp. at 19-20.

"To make out a violation pursuant to Brady v. Maryland, 373 U.S. 83, 87 (1963), the Petitioner is obliged to show that the undisclosed evidence 'creates a reasonable doubt that did not otherwise exist' as to his guilt." United States v. Alexander, 789 F.2d 1046, 1049 (4th Cir. 1986) (quoting United States v. Agurs, 427 U.S. 97, 112 (1976)). Under Brady, the "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution." Brady, 373 U.S. at 87. The [Petitioner] has the burden of proving that the "evidence at issue is favorable to the accused, either because it is exculpatory, or because it is impeaching; and 2) that the evidence was material to the defense." United States v. Moussaoui, 591 F.3d 262, 285 (4th Cir. 2010). Evidence is material "when its suppression undermines confidence in the outcome of the trial, such that the result of the proceeding would have been different." United States v. Kelly, 35 F.3d 929, 936 (4th Cir. 1994) (quoting United States v. Bagley, 473 U.S. 667, 678 (1985)). However, the Brady right is a right exclusive to trial. See Brady, 373 U.S. at 83 (holding that due process

22

requires a prosecutor to disclose exculpatory evidence to the defendant before trial); Moussaoui, 591 F.3d at 285; see also United States v. Flores, 540 F.2d 432, 437 (9th Cir. 1976) ("Brady does not create any pre-trial discovery privileges not contained in the Federal Rules of Criminal Procedure. Further, Brady only requires that the government supply a defendant with exculpatory information . . . ."). Moreover, where a defendant waives trial and pleads guilty, the concerns for ensuring a fair trial by requiring the prosecution to disclose exculpatory evidence pursuant to Brady are absent. Moussaoui, 591 F.3d at 285. "To date, the United States Supreme Court has not addressed the question of whether the Brady right to exculpatory information, in contrast to impeachment information, might be extended to the guilty plea context." Id.

In the instant case, the Petitioner fails to meet his burden under Brady that the photo spread is exculpatory. First, the Petitioner's case never went to trial. Therefore, the Brady right never attached. Instead, pursuant to a plea agreement and a signed statement of facts, the Petitioner pled guilty. Moreover, the Petitioner's own confession, signed statement of facts, guilty plea, positive witness identification, and evidence found all confirm his guilt as to the charged

offenses.[19] Thus, the issue of factual guilt was established, and the photo spread could not have saved the Petitioner. Further, "because '[c]ourts must be able to rely on the defendant's statements made under oath during a properly conducted Rule 11 plea colloquy,' § 2255 claims that contradict prior sworn statements are deemed 'patently frivolous or false' except in the case of extraordinary circumstances." United States v. Galloway, No. 2:10cr96, 2014 WL 584047, at *10 (E.D. Va. Feb. 12, 2014) (quoting United States v. Lemaster, 403 F.3d 216, 221 (4th Cir. 2005)). The Petitioner fails to allege any "extraordinary circumstances" that would allow him to effectively contradict his sworn statements made during his plea colloquy. As such, the Petitioner's Motion for Habeas Corpus fails on this claim. Additionally, for the reasons stated above, the Petitioner's ineffective assistance of counsel claim as it relates to the filing of a motion under Brady for the discovery of the photo spread also fails unde the first prong of the Strickland Test. See Strickland, 466 U.S. at 687.

---

[19] To the extent that in the future the Petitioner attempts to make the same exculpatory arguments under Brady as to the video surveillance and photo stills, the same reasoning stated supra Part II.E would apply to those arguments.

### F. Ground Seven: Prosecutorial Misconduct for Prosecuting the Petitioner in Federal Court

The Petitioner next argues that "[t]he federal prosecution was a prosecution sham, brought only after the state of Virginia nolle processed [sic] the charges because of a lack of sufficient evidence." Mem. in Supp. at 12. Specifically, the Petitioner alleges that "the state attorney's decision not to proceed to trial was because all of the evidence alleging Petitioner and his co-defendant as the suspects came back inconclusive." Id. Further, the Petitioner contends that "the State's prosecution was merely a 'sham,' a 'tool', or 'cat's paw' manipulated by the United States to revive a prosecution barred on federal constitutional grounds." Id. The Petitioner is incorrect in his assertions, and his claim lacks merit.

Under the doctrine of dual sovereignty, federal and state governments may independently prosecute a person for the same offense. Heath v. Alabama, 474 U.S. 82, 88 (1985). "Federal officials may cooperate with state officials without risking violating the Double Jeopardy Clause; however, prosecution by the federal government may not simply be a 'sham and a cover' for state prosecution." United States v. 152 Char-Nor Manor Blvd. Chestertown, Md., 922 F. Supp. 1064, 1070 (D. Md. 1996) (quoting Bartkus v. Illinois, 359 U.S. 121, 123-24 (1959)). In essence, the Double Jeopardy Clause may be violated and a sham

may be proven when one prosecuting sovereign acts as a tool for the other sovereign, so that one sovereign is "'dominated, controlled or manipulated'" by the other sovereign. United States v. Montgomery, 262 F.3d 233, 238 (4th Cir. 2001) (quoting United States v. Holland, 985 F. Supp. 587, 594 (D. Md. 1997)).

The Petitioner was indicted by a federal grand jury on January 10, 2010, after his state charges were nolle prossed.[20] Once a federal indictment is filed, state charges are routinely dismissed, which is what transpired in the instant case. See United States v. Taylor, 240 F.3d 425, 427 (4th Cir. 2001). Because the Defendant committed three armed robberies constituting federal offenses, the United States chose to prosecute him in this court. The Petitioner pled guilty to the offenses with the full advice of counsel, signed a plea agreement and an agreed statement of facts, and was ultimately sentenced accordingly. Thus, nothing in the instant case suggests that the prosecution of the Petitioner in this court was a sham, or that sufficient evidence did not exist to prosecute the Petitioner while he was first in state custody. To the extent that the Petitioner claims defense counsel was ineffective for failing to file a motion to dismiss the federal

---

[20] Even if the Petitioner had been brought to trial in state court, there would be no double jeopardy problem. Heath, 474 U.S. at 92 (discussing the "dual sovereignty" doctrine).

26

indictment, that claim also fails under the first prong of the Strickland test as it lacks merit. See Strickland, 466 U.S. at 687.

Consequently, the Petitioner offers no evidence other than his personal beliefs that the federal prosecution was a "sham," and that the Commonwealth of Virginia chose not to prosecute him for "lack of sufficient evidence."

### G. Ground Eight: Alleyne v. United States

Finally, the Petitioner argues that the Supreme Court's recent opinion in Alleyne v. United States, 133 S. Ct. 2151 (2013), offers grounds for relief. Specifically, the Petitioner alleges that the court improperly applied 18 U.S.C. § 924(c) in light of Alleyne. In Alleyne, the Court held that when a defendant is convicted at trial, "any fact that increases the mandatory minimum [sentence for a crime] is an 'element' [of the crime, not a sentencing factor,] that must be submitted to the jury." Alleyne, 133 S. Ct. at 2155.

In this case, the Petitioner pled guilty to the elements of the 18 U.S.C. § 924(c) charge, and so no determination of any of the elements of the crime by a jury was necessary; Alleyne is inapplicable on its face. Moreover, even if the facts of this case matched those of Alleyne, the Supreme Court has not made Alleyne retroactively applicable to cases on collateral review,

27

and courts that have been presented with the question of whether
Alleyne applies retroactively have found that it does not. See,
e.g., Willoughby v. United States, 3:99-cr-493, 2013 WL 5220774,
at 2* (W.D.N.C. Sept. 17, 2013); United States v. Condra, 1:05-
cr-50, 2013 WL 4678165, at *2 (W.D.Va. Aug. 30, 2013); Muhammad
v. Purdue, 5:12-cr-129, 2013 WL 4508870, at *4 (N.D.W.Va.
Aug. 23, 2013).[21] Consequently, Alleyne offers the Petitioner no
grounds for relief.[22]

### III. Conclusion

For the aforementioned reasons, the Petitioner's Motion is
**DENIED** as to all claims except Ground One. The Petitioner is
**ADVISED** that he may not appeal from this Memorandum Order until
the court has resolved Ground One. If the Petitioner wishes to
maintain his claim in Ground One, he must file a sworn

---

[21] Moreover, Alleyne is an extension of Apprendi v. New Jersey,
530 U.S. 466 (2000), and the Supreme Court has decided that
other Apprendi rules do not apply retroactively, implying that
the Court would hold that Alleyne should not be applied
retroactively either. Simpson v. United States, 721 F.3d 875,
876 (7th Cir. 2013); see also In re Payne, 13-5103, 2013 WL
5200425, at *1-2 (10th Cir. Sept. 17, 2013) (agreeing with the
court in Simpson that Alleyne does not apply retroactively and
that the Supreme Court would not hold that it does).

[22] In the Petitioner's Memorandum in Support, he characterizes
this claim as "[w]hether counsel's failure to argue governments
enhancement at sentencing constitute ineffective assistance of
counsel [sic]." Mem. in Supp. at 21. For the aforementioned
reasons, it would have been frivolous for his counsel to argue
this point, so his attorneys' actions in this regard were
reasonable. Consequently, Strickland offers the Petitioner no
relief. Strickland, 466 U.S. at 689, 694.

statement, under penalty of perjury, that he specifically and unequivocally asked defense counsel to file a notice of appeal, and describe the facts and circumstances of such request. If no such document is filed within thirty days (30) from the date of entry of this Memorandum Order, the Motion shall be dismissed in its entirety.

The Clerk is **DIRECTED** to forward a copy of this Memorandum Order to the Petitioner; to Mr. Kimball and Ms. Katchmar; and to the Assistant United States Attorney at Newport News.

IT IS SO ORDERED.

/s/
Rebecca Beach Smith
Chief
United States District Judge

REBECCA BEACH SMITH
CHIEF UNITED STATES DISTRICT JUDGE

July 16, 2014