**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Newport News Division**

**UNITED STATES OF AMERICA,**

    **v.**                              **CRIMINAL NO. 4:12cr4**

**OLUWASEGUN OGUN,**

        **Defendant.**

## OPINION

This matter comes before the court on Defendant's "Supplemental [Motion and] Memorandum in Support of Compassionate Release Under 18 U.S.C. § 3582(c)(1)(A)(i)" and attached exhibits ("Motion"), filed through counsel on September 19, 2022.[1] ECF Nos. 294, 294-1, 296-1. In his Motion, Defendant argues that the court should reduce his sentence in light of <u>United States v. McCoy</u>, 981 F.3d 271 (4th Cir. 2020), where the Fourth Circuit held that district courts had the authority under 18 U.S.C. § 3582(c)(1)(A)(i) to reduce the sentence of defendants who received "stacked" sentences under

---

[1] Defendant initially filed through counsel a "Motion for Indicative Ruling Under Fed. R. Crim. P. 37(a)(3) on Compassionate Release Under 18 U.S.C. § 3582(c)(1)(A)(i)" ("Motion for Indicative Ruling") on July 27, 2021. ECF No. 265. In addition to the reasons set forth in his "Supplemental [Motion and] Memorandum in Support of Compassionate Release Under 18 U.S.C. § 3582(c)(1)(A)(i)" ("Motion"), Defendant incorporates the reasons set forth in his Motion for Indicative Ruling. ECF No. 294 at 1.

18 U.S.C. § 924(c) prior to the passage of the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 ("First Step Act"). See ECF Nos. 265 at 5-6, 270 at 1, 294 at 3. Defendant also argues that the ongoing COVID-19 pandemic and his rehabilitation support a finding of "extraordinary and compelling" reasons justifying a sentence reduction under 18 U.S.C. § 3582(c). See ECF Nos. 265 at 7, 270 at 1.

Defendant was arrested on January 26, 2012, and has since been held in federal custody for more than one hundred thirty-three (133) months. See ECF No. 9 (Temporary Detention Order following Defendant's Initial Appearance). His release date is currently scheduled for October 21, 2041.[2] If he received the mandatory minimum sentence that would apply today to his § 924(c) convictions, Defendant argues that he would be serving a total sentence of two hundred five (205) months: eighty-four (84) months for each of the two § 924(c) convictions[3] and thirty-seven (37) months for the conspiracy conviction.[4] ECF No. 265

---

[2] BOP, Find an inmate., https://www.bop.gov/inmateloc/.

[3] Under current law, Defendant would face a mandatory minimum sentence of seven (7) years of imprisonment for brandishing a firearm during a crime of violence, as set forth in 18 U.S.C. § 924(c)(1)(A)(ii), for both Counts Five and Six, to run consecutively, for a total of fourteen (14) years of imprisonment.

[4] The United States points out that, under the United States Sentencing Guidelines, Defendant's range for his conspiracy conviction was ninety-seven (97) to one hundred twenty-one (121) months' incarceration, as indicated in the Presentence

2

at 2. Accordingly, Defendant asks that the court reduce his sentence to two hundred five (205) months. ECF No. 294 at 1,3. Defendant has completed over half of that alternative sentence. See ECF Nos. 265 at 2, 294 at 1. For the reasons explained below, the court **GRANTS** Defendant's Motion.

## I. Procedural History

This case has a protracted procedural history, starting with the Indictment on January 10, 2012. ECF No. 1. On February 16, 2012, Defendant filed a Motion to Dismiss for Lack of Subject Matter Jurisdiction, ECF No. 21, which was denied on March 16, 2012, ECF No. 28. Then, on March 22, 2012, Defendant pleaded guilty to Counts One, Five, and Six of the Indictment. ECF No. 39. The charges were one count of Conspiracy to Commit Hobbs Act Robbery, in violation of 18 U.S.C. § 1951(a) (Count One) and two counts of Brandishing a Firearm during a Crime of Violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii) (Counts Five and Six). ECF No. 39 at 1-2.

On June 27, 2012, the court sentenced Defendant to thirty-seven (37) months on Count One, eighty-four (84) months on Count Five, and three hundred (300) months on Count Six, all

---

Investigation Report. ECF No. 269 at 16 (citing ECF No. 69 at 23). The court notes, however, that when sentencing Defendant, it departed from this range and imposed a sentence of thirty-seven (37) months on Count One after considering "the presentence report, the Plea Agreement, the agreed Statement of Facts, and the Guidelines application together with the factors under 18 U.S.C. § 3553." ECF No. 61 at 4.

to be served consecutively. ECF No. 60. This sentence represented an aggregate of four hundred twenty-one (421) months' incarceration, followed by five (5) years of supervised release. Id. at 2-3

On June 24, 2013, Defendant moved to vacate his conviction under 28 U.S.C. § 2255 ("First Motion to Vacate"). ECF No. 94. On July 15, 2013, Defendant also moved for an order requiring the United States to produce "Brady material" from a "photo spread" of Defendant. ECF No. 100. On July 16, 2013, the court denied the July 15 motion because Defendant failed to make a preliminary showing that the requested document contained exculpatory or impeaching information. ECF No. 101. On July 29, 2013, Defendant filed a Motion for Reconsideration, subject to defect, regarding this denial. ECF No. 102. After Defendant corrected the defect, the court held Defendant's First Motion to Vacate in abeyance pending resolution of the Motion for Reconsideration. ECF No. 108. On September 24, 2013, the court found that the Brady disclosure motion and its reconsideration motion were moot because the United States provided the requested document to Defendant. ECF No. 115.

With the Brady motion resolved, the court ruled on the First Motion to Vacate on July 16, 2014. ECF No. 150. The court denied the First Motion to Vacate as to all claims except Ground One, ineffective assistance of counsel for failure to appeal.

4

Id. at 7-10, 28. The court stated that if Defendant wanted to maintain his claim on Ground One, he was required to file "a sworn statement, under penalty of perjury, that he specifically and unequivocally asked defense counsel to file a notice of appeal, and describe the facts and circumstances of such request." Id. at 28-29. As to the other grounds, Defendant could not prove ineffective assistance of counsel or prosecutorial misconduct. See id. On August 4, 2014, Defendant filed an affidavit, ECF No. 152, and on August 28, 2014, filed a sworn statement, ECF No. 154. On September 11, 2014, the court ordered that a hearing be held on the limited issue of whether Defendant had asked his attorneys to file a notice of appeal. ECF No. 155. On September 12, 2014, the court appointed an attorney to represent Defendant for this hearing. ECF No. 157.

On September 29, 2014, Defendant moved for a new trial based on newly discovered evidence under Rule 33 of the Federal Rules of Criminal Procedure ("Rule 33"). ECF No. 158. On October 20, 2014, Defendant moved for the court to authorize him to issue subpoenas for exculpatory information. ECF No. 161. On October 31, 2014, the court denied both the Motion for New Trial and the Motion for Subpoena and Exculpatory Material. ECF No. 162. The court rejected the Motion for New Trial because nothing in Rule 33 was applicable to cases in which a defendant pleads guilty, as was the case for Defendant. Id. at 4. The

court rejected the Motion for Subpoena and Exculpatory Material because Defendant had not made the requisite "good cause" showing pursuant to Rule 6(a) of the Rules Governing § 2255 Cases. Id. at 5.

The court held an evidentiary hearing on November 14, 2014, regarding Defendant's ineffective assistance of counsel claim. ECF No. 163. On December 12, 2014, the court denied the First Motion to Vacate because defense counsel's performance was not constitutionally deficient. ECF No. 164 at 17. Defendant appealed the court's denial of his First Motion to Vacate on February 9, 2015, ECF No. 171, and the Fourth Circuit denied the certificate of appealability and summarily dismissed the appeal on July 30, 2015, ECF Nos. 175, 176, 177.

On June 27, 2016, the Fourth Circuit granted authorization for Defendant to file a second or successive § 2255 motion. ECF No. 184. The Second Motion to Vacate under 28 U.S.C. § 2255 ("Second Motion to Vacate"), ECF No. 183, asserted that Defendant's sentence should be vacated in light of the Supreme Court's decision in Johnson v. United States, 576 U.S. 591 (2015). On July 27, 2016, the court rejected the Second Motion to Vacate because Defendant's convictions for violating 18 U.S.C. § 924(c)(1)(A) did not implicate the holding in Johnson. ECF No. 192 at 5. On August 2, 2016, Defendant filed a Motion for Reconsideration of the Order Denying the Second

Motion to Vacate. ECF No. 195. On August 22, 2016, the court denied this motion for reconsideration because it did not state any intervening change in controlling law, or any clear error of law, and it did not indicate that manifest injustice could result from the court's denial. ECF No. 205 at 3-4.

On October 21, 2016, Defendant filed a notice of appeal as to the Order on his Motion for Reconsideration. ECF No. 209. On November 16, 2016, the Fourth Circuit, presented with Defendant's unopposed motion to hold the case in abeyance, granted the motion and placed the case in abeyance, ECF No. 212, pending a decision by the Supreme Court in Dimaya v. Lynch, 803 F.3d 1110 (9th Cir. 2015), cert. granted, 579 U.S. 969 (2016),[5] or a decision by the Fourth Circuit in United States v. Simms, 914 F.3d 229 (4th Cir. 2019) (first orally argued on October 28, 2016).[6] See ECF No. 212 (unpublished order in United States v. Ogun, No. 16-7450 (4th Cir. Nov. 16, 2016)).

On April 24, 2017, Defendant filed a Motion to Dismiss for Lack of Subject Matter Jurisdiction ("Third Motion to Vacate"),

---

[5] The Supreme Court affirmed the Ninth Circuit in Sessions v. Dimaya, __ U.S. __, __, 138 S. Ct. 1204, 1207 (2018) (concluding that the residual clause of 18 U.S.C. § 16(b) is unconstitutionally vague).

[6] The Fourth Circuit reversed the trial court and remanded for further proceedings consistent with the opinion. United States v. Simms, 914 F.3d 229, 232, 252 (4th Cir. 2019), cert. denied, __ U.S. __, 140 S. Ct. 304 (2019) (holding that 18 U.S.C. § 924(c)(3)(B) fails to comport with due process).

ECF No. 213, which the court construed as Defendant's <u>second</u> <u>successive</u> § 2255 petition. <u>See</u> ECF No. 220. On May 5, 2017, Defendant filed another Motion to Dismiss for Lack of Subject Matter Jurisdiction ("Fourth Motion to Vacate"), ECF No. 216, which the court construed as Defendant's <u>third</u> <u>successive</u> § 2255 petition. <u>See</u> ECF No. 220. On May 23, 2017, the court dismissed Defendant's Third and Fourth Motions to Vacate because Defendant did not have authorization to file these successive petitions from the Fourth Circuit. <u>Id.</u> at 3. On June 2, 2017, Defendant moved for leave to object to the court's Dismissal Order. ECF No. 222. On June 5, 2017, the court denied this motion, noting that Defendant could appeal the Dismissal Order. ECF No. 223. On June 15, 2017, Defendant appealed the Dismissal Order, ECF No. 224, and on August 29, 2017, the Fourth Circuit denied the appeal, ECF Nos. 229, 230, 232.

On November 2, 2020, the Fourth Circuit granted a partial certificate of appealability on Defendant's October 21, 2016, appeal, limited to the following issue: whether a conviction under 18 U.S.C. § 924(c) is infirm if it rests on multiple predicate crimes of violence, at least one of which is invalid. ECF No. 241. However, on April 13, 2021, the Fourth Circuit placed the appeal in abeyance pending a decision by the court in <u>United States v. Crawley</u>, 2 F.4th 257 (4th Cir. 2021) (orally argued on March 9, 2021). ECF No. 262. The Fourth Circuit

recently decided Crawley and upheld a conviction under 18 U.S.C. § 924(c), where it was predicated on one valid predicate and one invalid predicate offense. 2 F.4th at 259.

With his appeal still pending, Defendant filed a "Motion for Indicative Ruling under Fed. R. Crim. P. 37(a)(3) on Compassionate Release under 18 U.S.C. § 3582(c)(1)(A)(i)" ("Motion for Indicative Ruling") on July 27, 2021. ECF No. 265. In that motion, Defendant asked the court to indicate whether it would grant his motion for compassionate release pursuant to § 3582(c)(1)(A)(i). Id. at 1, 4. Although the United States did not oppose Defendant's request for an indicative ruling, it did oppose his motion for compassionate release. ECF No. 269 at 6-7, 9. Defendant filed a reply on September 13, 2021. ECF No. 270.

While Defendant's Motion for Indicative Ruling was still pending, on March 22, 2022, the Fourth Circuit ruled on his October 21, 2016, appeal. ECF Nos. 286, 287, 292. The Fourth Circuit affirmed this court's denial of Defendant's Second Motion to Vacate, ECF No. 287, and held that because Defendant's § 924(c) charges were "expressly based on a valid predicate and an invalid predicate" his conviction could be sustained under Crawley, ECF No. 286 at 5. In response, this court found Defendant's Motion for Indicative Ruling to be moot and allowed Defendant to supplement his compassionate release claims before ruling on a compassionate release motion. ECF No. 293 at 2.

Defendant filed the present Motion on September 19, 2022, ECF No. 294, and the United States filed its Supplemental Response in Opposition to Defendant's Motion for Compassionate Release on October 19, 2022, ECF No. 295. On October 31, 2022, Defendant also filed a Motion for Leave to File Supplemental Information in Support of Compassionate Release, ECF No. 296, which this court granted on November 2, 2022, ECF No. 297. Having been fully briefed, the Motion is now ripe for judicial determination.

## II. Exhaustion of Administrative Remedies

Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), the court may modify a term of imprisonment, if it finds that "extraordinary and compelling reasons warrant such a reduction." Before the court may consider such a motion, the defendant must have "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons [(BOP)] to bring a motion on the defendant's behalf," or there must have been a "lapse of 30 days from the receipt of such a request by the warden of the defendant's facility." 18 U.S.C. § 3582(c)(1)(A). The Fourth Circuit has clarified that defendants may satisfy this exhaustion requirement by "wait[ing] 30 days from the date of their initial request to file a motion in the district court," even if the warden has already responded to their request. United States v. Muhammad, 16 F.4th 126, 131 (4th Cir. 2021) (collecting cases).

10

The court further clarified that the exhaustion requirement "is a non-jurisdictional claim-processing rule," and therefore "may be waived or forfeited." Id. at 130.

On May 6, 2021, Defendant submitted a request for compassionate release to the warden of his institution. ECF Nos. 265 at 3, 265-1, 265-2. On June 8, 2021, after the exhaustion requirement was satisfied, Defendant's counsel contacted BOP requesting an update on the compassionate release request. ECF No. 265-2. BOP acknowledged receipt of the request but did not offer a response on the merits. Id.

The United States acknowledges that Defendant has satisfied the exhaustion requirement for the sentence disparity claim but disputes that Defendant has done so for his COVID-19 and rehabilitation claims. ECF Nos. 269 at 7, 295 at 4-5. The United States argues that because Defendant never presented the COVID-19 and rehabilitations claims to the BOP, he cannot assert them for the first time before the court. ECF Nos. 269 at 9, 295 at 5.

Defendant, however, maintains that this single request satisfies the administrative exhaustion requirement of 18 U.S.C. § 3582(c)(1)(A), as to the sentence disparity, COVID-19, and rehabilitation arguments raised in the Motion for two reasons. ECF No. 270 at 2-5. First, Defendant argues that the request for reduction sent to the warden raised each of these grounds for

11

compassionate release. Id. at 3. Even if COVID-19 and his rehabilitation were not sufficiently discussed, as the United States maintains, Defendant also argues that the statutory framework of the First Step Act and § 3582(c)(1)(A) do not require each individual issue brought before the court to be previously addressed in the request to the warden. Id. at 3-5. Defendant points to case law that has held that § 3582(c)(1)(A) does not require this kind of "issue exhaustion." See id. at 3-4 (listing cases holding that no issue exhaustion is required).[7]

The court does not need to resolve this question regarding issue exhaustion for two reasons. One, Defendant tangentially mentioned COVID-19's impact on his life, including his rehabilitation, in his request to the warden. ECF No. 265-1 at 2. Two, even if Defendant has not exhausted the administrative remedies, the court concludes that waiver of the exhaustion requirement is warranted as strict compliance with the exhaustion requirement would be futile. Here, Defendant made a request to the BOP for compassionate release and the BOP did

---

[7] Numerous courts have considered this issue and reached different conclusions. Compare United States v. Wilson, No. cr14-209-1, 2020 WL 1975082, at *4 (E.D. Pa. Apr. 24, 2020) ("To enable Bureau of Prisons to make this informed decision envisioned by Congress, the Bureau of Prisons must be fairly put on notice of the grounds for compassionate release."), with United States v. Brown, 457 F. Supp. 3d 691, 697 (S.D. Iowa 2020) (noting that 18 U.S.C. § 3582(c)(1)(A) "does not . . . state that the reasons presented to the warden must mirror those presented to the district court").

not evaluate Defendant's claims, even after being given an opportunity to do so following the initial thirty (30) day deadline. See ECF No. 265-2. The United States argues that the exhaustion requirement is needed to provide the BOP with an opportunity to evaluate Defendant's request; however, this argument rings hollow. ECF No. 269 at 8; see United States v. Carter, No. 4:19cr51-2, 2022 WL 3045001, at *2 (E.D. Va. Aug. 2, 2022) (denying defendant's motion for compassionate release where there was no "attempt to exhaust her remedies with the BOP before filing her [m]otion with the district court"). Even assuming that the United States is correct, the BOP has failed to exercise this opportunity to evaluate the request on its merits. See ECF No. 265-2. Indeed, this lack of responsiveness is precisely why Congress modified § 3582(c)(1)(A) to remove the BOP from its gatekeeping role over compassionate release claims. McCoy, 981 F.3d at 281, 283 (". . . Congress, aware of the BOP's history of extensive delays, also provided a '30-day lapse' alternative, under which a defendant may proceed directly to district court if his request is not acted on within that time."); Muhammad, 16 F.4th at 129-30. Therefore, the court will proceed to address the merits of Defendant's Motion finding that the exhaustion requirement is satisfied for the above-enumerated reasons.

13

### III. Merits

The court now considers whether Defendant has shown "extraordinary and compelling reasons" that justify a reduction in his sentence. Any reduction under § 3582(c)(1)(A) must be "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A); see McCoy, 981 F.3d at 276. In McCoy, the Fourth Circuit held that "there currently exists no 'applicable policy statement'" because the Commission has not issued a policy statement since the passage of the First Step Act. 981 F.3d at 281-82 (alteration omitted). Therefore, until the Sentencing Commission issues an updated policy statement, "district courts are 'empowered to consider any extraordinary and compelling reason for release that a defendant might raise.'" Id. at 284 (alteration omitted) (quoting United States v. Brooker, 976 F.3d 228, 230 (2d Cir. 2020)). In particular, the Fourth Circuit held that courts "may consider, under the 'extraordinary and compelling reasons' inquiry, that defendants are serving sentences that Congress itself views as dramatically longer than necessary or fair." McCoy, 981 F.3d at 285-86.

Whatever a defendant argues, the overarching purpose of the compassionate release mechanism guides district courts:

> When Congress authorized district courts, as a matter of discretion, to release an inmate from prison based on extraordinary and compelling reasons, it did so to

> introduce compassion as a factor in assessing ongoing
> terms of imprisonment, authorizing a district court to
> give greater weight to an inmate's personal
> circumstances – when sufficiently extraordinary and
> compelling – than to society's interests in the
> defendant's continued incarceration and the finality
> of judgments.

United States v. Hargrove, 30 F.4th 189, 197 (4th Cir. 2022).

Ultimately, therefore, the court must "balance the severity of

the inmate's personal circumstances, on the one hand, against

the needs for incarceration, on the other." Id.

Although the policy statement in U.S.S.G. § 1B1.13 is no

longer binding on this court after the Fourth Circuit's decision

in McCoy, the court finds certain of its provisions useful in

addressing the instant Motion. For example, the court will still

consider "the factors set forth in 18 U.S.C. § 3553(a), to the

extent that they are applicable," U.S.S.G. § 1B1.13, and whether

"[t]he defendant is . . . a danger to the safety of any other

person or to the community," id. § 1B1.13(2), because these

considerations remain highly relevant to whether a reduction in

sentence is warranted in this case. In addition, "because

U.S.S.G. § 1B1.13 addresses what is, in the medical context, an

'extraordinary and compelling reason' for release," the court

will consider it when assessing the significance of Defendant's

medical conditions. See Hargrove, 30 F.4th at 197 (quoting

United States v. High, 997 F.3d 181, 186 (4th Cir. 2021)).

## A. Extraordinary and Compelling Reasons

Defendant's Motion claims three (3) "extraordinary and compelling" reasons for compassionate release. First, Defendant notes the sentencing disparity that exists between his original sentence and the sentence he would have received for the same offense conduct after the passage of the First Step Act. ECF Nos. 265 at 5-6, 294 at 3. Second, Defendant points to the COVID-19 pandemic as giving rise to an extraordinary risk to his health while also multiplying the punitive nature of Defendant's sentence. ECF Nos. 265 at 7, 294 at 1. Lastly, Defendant argues that his rehabilitation over the last eleven (11) years in prison supports his argument for compassionate release. ECF Nos. 265 at 21-23, 294 at 7, 296-1. He also maintains that the 18 U.S.C. § 3553(a) factors point in favor of a reduced sentence. ECF Nos. 265 at 19-25, 294 at 6.

### 1. Stacked Sentences Post-McCoy

The court begins its consideration of Defendant's Motion with a discussion of the Fourth Circuit's McCoy decision and its relevance to Defendant's sentence.

#### a. General Effect of McCoy

In McCoy, the defendants were each convicted of and sentenced on multiple offenses under 18 U.S.C. § 924(c) prior to the passage of the First Step Act. 981 F.3d at 277-79. At the time of their sentencing hearings, § 924(c)(1)(C) required a

16

so-called "stacked" sentence for a "second or subsequent conviction" under § 924(c) -- that is, either enhanced mandatory minimum sentences of twenty (20) years or twenty-five (25) years for a second or subsequent § 924(c) conviction, depending upon the statute at the time of conviction. See id. at 275, 277, 278 n.3. Pursuant to then-applicable law, "a conviction was treated as 'second or subsequent,' triggering the [enhanced mandatory] minimum sentence, even if the first § 924(c) conviction was obtained in the same case." Id. at 275. The First Step Act "ended this practice . . . by clarifying that the [enhanced] mandatory minimum applies only when a prior § 924(c) conviction arises from a separate case and already has become final." Id. (emphasis added and internal quotation marks omitted).

Although the First Step Act did not make this reform retroactive to cases in which defendants had already been sentenced, the defendants in McCoy filed motions for compassionate release, requesting that the court take into consideration the fact that their sentences would be much shorter, if they were sentenced under the First Step Act. Id. at 274-75. The district courts granted the motions, and the defendants' sentences were reduced to time served. Id. at 274. The United States appealed, and the Fourth Circuit affirmed, holding that district courts considering motions for

compassionate release may properly consider "the length of [] defendants' sentences and the fact that those sentences would be dramatically shorter today . . . ." Id. at 284-85. The Fourth Circuit reasoned that while not all defendants convicted under § 924(c) should receive new sentences, courts may grant relief on a case-by-case basis where a defendant meets "the heightened standard of 'extraordinary and compelling reasons'. . . ." See id. at 287.

### b. Specific Effect of McCoy on Defendant

In this case, Defendant was convicted of violating § 924(c) based on Counts Five and Six of the Indictment. ECF No. 1. Because Defendant was convicted and sentenced prior to the passage of the First Step Act, the court was required to impose a sentence of at least three hundred (300) months for the § 924(c) violation on Count Six. ECF No. 69 at 23, ¶ 69. In contrast, if the court sentenced Defendant today for the same crime, he would face a sentence on Count Six of only eighty-four (84) months, the same as on Count Five. See McCoy, 981 F.3d at 275. Consequently, on Count Six, Defendant received a prison term eighteen (18) years longer than "the sentence[] Congress now believes to be an appropriate penalty for the [D]efendant's conduct." Id. at 285.[8]

---

[8] The court disagrees with the United States' assertion that Defendant's would-be sentence post-First Step Act "is a far cry

In accordance with McCoy, the court finds that Defendant
has shown extraordinary and compelling reasons under 18 U.S.C.
§ 3582(c)(1)(A)(i). However, this disparity alone does not
automatically give rise to a reduction in sentence. See McCoy,
981 F.3d at 287 ("[O]nly those defendants who can meet the
heightened standard of 'extraordinary and compelling reasons'
may obtain relief."). District courts must "t[ake] seriously the
requirement that they conduct individualized inquiries" before
granting relief. Id. at 288 (finding that "factors [such] as the
defendants' relative youth at the time of their offenses, their
post-sentencing conduct and rehabilitation, and the very
substantial terms of imprisonment they already served" were
relevant to the inquiry). Therefore, the court will continue its
analysis by considering Defendant's COVID-19, infra Part
III.A.2, and rehabilitation, infra Part III.A.3, arguments, in
addition to weighing the 18 U.S.C. § 3553(a) factors, infra
Part III.B.

## 2. Effect of COVID-19 on Defendant

Defendant argues that the increased threat of serious
illness or death from COVID-19 and the "impact of the virus on

---

from the 'dramatically shorter' sentences at issue in McCoy."
ECF No. 269 at 16 (citing United States v. McCoy, 981 F.3d 271,
274 (4th Cir. 2020)). See, e.g., United States v. Mumford, 544
F. Supp. 3d 615, 619 (E.D. Va. 2021) (Smith, J.) (granting
defendant's motion for compassionate release based, in part, on
the one hundred twenty (120) month disparity between a pre-First
Step Act and post-First Step Act sentencing).

the conditions at [his] facility" constitute extraordinary and compelling reasons that warrant a reduction in his sentence. ECF Nos. 265 at 18, 270 at 10, 294 at 1.

### a. Legal Standard

"Fear of COVID doesn't automatically entitle a prisoner to release." United States v. Thompson, 984 F.3d 431, 435 (5th Cir. 2021). Rather, "[i]n the context of the COVID-19 outbreak, courts have found extraordinary and compelling reasons for compassionate release when an inmate shows both a particularized susceptibility to the disease and a particularized risk of contracting the disease at his prison facility." United States v. Feiling, 453 F. Supp. 3d 832, 841 (E.D. Va. 2020) (Novak, J.); see, e.g., Hargrove, 30 F.4th at 195-96, 200 (affirming order applying this standard). Thus, to demonstrate extraordinary and compelling reasons for release due to the COVID-19 pandemic, a defendant must at least demonstrate that "he is more at risk for an adverse outcome in prison than he would be if released." See United States v. Barbee, 25 F.4th 531, 533 (7th Cir. 2022). For the reasons explained below, Defendant fails to make this showing.

### b. Particularized Susceptibility

As an initial matter, Defendant has not introduced any medical records that show he suffers from a serious underlying condition, nor does he argue that he is particularly susceptible

20

for any reason whatsoever. See ECF Nos. 265 at 18, 265-6 at 3 ("[Defendant] is classified as a healthy or simple chronic care inmate with no medical restrictions."). A relatively healthy person does not face a particularized susceptibility to COVID-19. See United States v. Doyle, No. 3:15cr191, 2020 WL 4590517, at *5 (E.D. Va. Aug. 10, 2020) (Lauck, J.) (finding that a general risk of COVID-19 does not create an extraordinary and compelling reason to release a relatively healthy defendant). Defendant also notes that he is vaccinated. ECF No. 270 at 10. His vaccination has already granted him more effective relief from COVID-19 than a judicial order could provide.[9] See United States v. Sanders, No. CR SAG-06-087, 2021 WL 1428546, at *3 (D. Md. Apr. 15, 2021) (holding that defendant's "vaccination status remove[d] his other medical conditions from the category of risk constituting an 'extraordinary and compelling reason,'" and collecting cases concluding the same); United States v. Broadfield, 5 F.4th 801, 803 (7th Cir. 2021) ("[F]or the many prisoners who seek release based on the special risks created by COVID-19 for people living in close quarters, vaccines offer relief far more effective than a judicial order."). Defendant simply faces the same risk of infection as any other vaccinated person.

---

[9] CDC, COVID-19 Vaccines Work, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/effectiveness/work.html.

### c. Particularized Risk

Defendant also is not particularly at risk of contracting the disease at his prison facility, FCI Petersburg Medium. Current statistics illustrate that the BOP's ongoing mitigation efforts, including widespread vaccination, have significantly reduced Defendant's risk of contracting the virus at his institution. A large number of inmates and staff at FCI Petersburg Medium have been inoculated against COVID-19 with vaccines[10] shown to be effective at preventing serious COVID-19 illness.[11] And as of February 15, 2023, FCI Petersburg Medium had zero (0) active cases of COVID-19 among inmates and only two (2) active cases among staff members.[12] These numbers leave the court unconvinced that Defendant has a particularized risk of contracting COVID-19 at his facility. See, e.g., United States v. Spencer, 521 F. Supp. 3d 606, 612 (E.D. Va. 2021) (Smith, J.) (denying motion where the defendant's facility had only two (2) active COVID-19 cases among inmates).

---

[10] As of February 15, 2023, full inoculations were completed for 2,748 prisoners, and at least 405 staff members, at Petersburg FCC, the prison complex in which FCI Petersburg Medium is located. BOP, COVID-19 Vaccine Implementation, https://www.bop.gov/coronavirus/.

[11] CDC, Benefits of Getting a COVID-19 Vaccine, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/vaccine-benefits.html.

[12] BOP, COVID-19 Cases, https://www.bop.gov/coronavirus/.

### d. COVID-19's Impact on the Severity of the Sentence

Defendant also claims that COVID-19's impact on his conditions of confinement further justifies compassionate release. See ECF Nos. 265 at 18, 294 at 1-2. While the pandemic may have made the conditions of his imprisonment more difficult, harsh conditions in a BOP facility alone do not create an extraordinary and compelling reason for release. See United States v. Burks, No. 3:14cr208, 2021 WL 1394857, at *4 (W.D.N.C. Apr. 13, 2021). In point-of-fact, every inmate in the BOP must deal with similar restrictions on movement and elevated health protocols in response to COVID-19. Id. Defendant has not presented any reason for the court to conclude he faces extraordinary restrictions.

In sum, the court concludes that the limited risk COVID-19 poses to Defendant and the generally applicable prison restrictions do not together amount to extraordinary and compelling circumstances. See supra Part III.A.2.

### 3. Defendant's Post-Sentence Conduct and Rehabilitation

Lastly, Defendant argues that his rehabilitation and good behavior while incarcerated justify a sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i). See ECF No. 265 at 18, 21-24; ECF No. 270 at 10-12. Defendant has served as a mentor and inspiration for others, consistently working and educating himself. ECF No. 265 at 21-24; ECF No. 265-3 (letters from

23

fellow inmates); ECF No. 265-6 at 1-2 (education and employment history while incarcerated); ECF No. 294-1 at 3-7 (certificates of completion); ECF No. 296-1 (Defendant's update on his acceptance into the selective UNICOR program). While he has had three (3) disciplinary infractions over the last eleven (11) years,[13] ECF No. 265-6 at 2, Defendant's rehabilitation shows commendable growth since the time of the offense conduct, ECF No. 265 at 23.

As it assesses this evidence of postconviction conduct, the court first notes that rehabilitation, alone, does not constitute an "extraordinary and compelling reason" for a reduction in sentence. 28 U.S.C. § 994(t). But the court recognizes that it may consider rehabilitation and other postconviction conduct, when paired with other factors, as an "extraordinary and compelling reason[]" for relief. 18 U.S.C. § 3582(c)(1)(A)(i); see United States v. Davis, No. 21-6960, 2022 WL 127900, at *1 (4th Cir. Jan. 13, 2022) (quoting McCoy, 981 F.3d at 286 n.9) ("[S]uccessful rehabilitation efforts can be considered as 'one among other factors.'"). Based on the

---

[13]   Defendant argues that these infractions are "relatively minor" because they only involve refusing to obey orders. ECF No. 265 at 23. Defendant also notes that he has appealed the most recent disciplinary infraction. Id. While the court does not completely agree with Defendant's assessment of his three (3) infractions over a period of eleven (11) years, they are not of such significance to alter this court's positive assessment of his post-sentence conduct and rehabilitation.

evidence before the court, Defendant's rehabilitation is a significant factor that the court will consider in determining whether a sentence reduction is appropriate.

The court agrees that Defendant's rehabilitation and postconviction conduct is "commendable," and even finds it to be "extraordinary and compelling." ECF No. 294 at 6; see 18 U.S.C. § 3582(c)(1)(A)(i). Defendant has clearly made the most of his time in prison, even when he was sentenced to four hundred twenty-one (421) months when he was only thirty-one (31) years old. ECF No. 265 at 21-23; see ECF No. 265-3 (letters from fellow inmates discussing the impact Defendant has made on their lives); ECF No. 265-6 at 1-2 (education and employment history while incarcerated); ECF No. 294-1 at 2-11 (demonstrating that Defendant has completed six (6) courses in a year's time, is currently enrolled in basic tennis and Opposition Prepares Personal Success, and teaches a fitness class); ECF No. 296-1 (Defendant's acceptance into UNICOR). Therefore, it would be an error for this court to fail to consider this extensive mitigating evidence. See Davis, 2022 WL 127900, at *3; United States v. Martin, 916 F.3d 389, 396 (4th Cir. 2019) (holding that a defendant's "mountain of new mitigating evidence," including her mentorship and educational advancement should have been considered).

### B. Section 3553(a) Factors

Although the court finds the effect of McCoy on Defendant's sentence length, especially when coupled with Defendant's rehabilitation, to be "extraordinary and compelling," this conclusion does not automatically entitle Defendant to a reduction in his sentence. See McCoy, 981 F.3d at 287. That is because "a district court may not grant a sentence reduction under 18 U.S.C. § 3582(c)(1)(A) without 'considering the factors set forth in section 3553(a) to the extent that they are applicable.'" United States v. Kibble, 992 F.3d 326, 331 (4th Cir. 2021) (quoting 18 U.S.C. § 3582(c)(1)(A)).

The first sentencing factor requires the court to consider "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). The court cannot overlook the seriousness of Defendant's offense conduct and this factor, no doubt, weighs against him. See id. Defendant committed three (3) armed robberies involving abductions and brandishing firearms. ECF No. 69 at 4-7 (summarizing Defendant's offense conduct); id. at 23, ¶ 67 (calculating Defendant's offense level to be 28); ECF No. 269 at 21. Furthermore, the court does not ignore Defendant's Category III criminal history, which includes a prior attempted

robbery and criminal possession of a weapon.[14] ECF No. 69 at 11, ¶ 22; id. at 23, ¶ 68.

While the court does not minimize or deny the seriousness of Defendant's crimes and criminal history, the court recognizes that § 3582(c)(1)(A)(i) allows a trial court "to reduce a sentence in 'any case' — not just cases where a sentence has been substantially served; not just in cases involving low-level or non-violent offenses." Kibble, 992 F.3d at 334 (Gregory, C.J., concurring) (citing United States v. Gonzales, 520 U.S. 1, 5 (1997)). Moreover, the court is mindful of other § 3553(a) factors for consideration, including promoting respect for the law, providing just punishment and adequate deterrence, protecting the public from further crimes, and providing treatment and training. See 18 U.S.C. § 3553(a)(2)(A)-(D). When considering Defendant's rehabilitation, see supra Part III.A.3, and the fact that Defendant would still receive a significant sentence even after the requested reduction, see supra Part

---

[14] The court does not necessarily see this escalating trend from the Defendant's limited criminal history, as suggested by the United States. ECF No. 269 at 21-22. The previous attempted robbery conviction occurred in 2002, nine (9) years before the relevant offense conduct here. ECF No. 69 at 11, ¶ 22. Defendant's good behavior while incarcerated and his lack of a serious criminal record before incarceration suggest a low risk of recidivism. See ECF No. 294 at 6-7 (Defendant's recidivism score of "low" on the Prisoner Assessment Tool Targeting Estimated Risk and Needs ("PATTERN tool")). On balance, the court finds that Defendant's substantial rehabilitation and limited criminal history weigh in favor of a reduction in sentence.

III.A.1; ECF No. 294 at 1, these factors point in Defendant's favor. See United States v. Mumford, 544 F. Supp. 3d 615, 619-20 (E.D. Va. 2021) (Smith, J.) (considering that the defendant had been incarcerated for "almost all of his adult life" and underscoring his "extensive efforts at rehabilitation" when weighing the § 3553(a) factors to find that a reduced sentence did not diminish the seriousness of defendant's crimes and mitigated the risk of danger to the community); United States v. McCullers, 557 F. Supp. 3d 732, 737-39 (E.D. Va. 2021) (Smith, J.) (recognizing the severity of the defendant's conduct, but also emphasizing that a majority of his sentence was required by the § 924(c) stacking provisions that were eliminated by the First Step Act).

The court must also consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."[15] 18 U.S.C. § 3553(a)(6). The First Step Act has drastically reduced the

---

[15] In addressing the need to avoid unwarranted sentencing disparities, the court also notes that it has granted relief under McCoy to two (2) defendants convicted of multiple § 924(c) offenses whose offense conduct was similar to Defendant's, and arguably more serious. See United States v. Bailey, 547 F. Supp. 3d 518, 521, 525-26 (E.D. Va. July 6, 2021) (Smith, J.) (reducing the sentence of a defendant convicted of six (6) counts of armed bank robbery and two (2) counts of violating § 924(c)); Mumford, 544 F. Supp. at 616, 618-20 (reducing the sentence of a defendant convicted of five (5) counts of armed bank robbery and two (2) counts of violating § 924(c)).

penalty associated with multiple § 924(c) offenses in the same indictment. See United States v. Tyndall, No. 2:10cr200, slip op. at 11 (E.D. Va. Aug. 10, 2021) (Smith, J.). Defendant's sentence is eighteen (18) years longer than similarly-situated defendants sentenced after the First Step Act. Defendant received a sentence more than triple what Congress now deems appropriate for such criminal conduct. See McCoy, 981 F.3d at 287-88. The record of this case does not offer a persuasive reason why Defendant should serve a vastly longer term of imprisonment than an identical defendant would serve today.[16] Although Defendant's offense conduct remains troubling, the original Judgment, standing today, creates an unwarranted sentence disparity, and does not account for Defendant's postconviction rehabilitation while incarcerated.

## IV. Conclusion

In sum, Defendant's Motion is properly before this court and the court concludes that a reduction in his sentence is warranted by "extraordinary and compelling reasons" and "is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). Therefore, for the reasons detailed and stated herein, the court **FINDS** that

---

[16] The Presentence Investigation Report contains "no information concerning the offense or the offender which would warrant a departure from the prescribed sentencing guidelines." ECF No. 69 at 24, ¶ 76.

a reduction in Defendant's sentence on Count Six, the second § 924(c) conviction in the Indictment, is warranted to match the current statutory mandatory minimum, post-McCoy sentence. See 18 U.S.C. § 924(c)(1)(A)(i). Accordingly, Defendant's Motion, ECF No. 294, is **GRANTED**, and his sentence on Count Six is **REDUCED** to eighty-four (84) months, to run consecutively to the sentences imposed on all other counts. This change **REDUCES** Defendant's total sentence from four hundred twenty-one (421) months to two hundred five (205) months.[17] Other than this sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i), the Judgment entered on June 27, 2012, ECF No. 60, remains in full force and effect.

The Clerk is **DIRECTED** to forward a copy of this Opinion to counsel for Defendant, the United States Attorney at Newport News, and the Bureau of Prisons.

**IT IS SO ORDERED.**

Rebecca Beach Smith
Senior United States District Judge

REBECCA BEACH SMITH
SENIOR UNITED STATES DISTRICT JUDGE

February 24, 2023

---

[17] This sentence combines thirty-seven (37) months for the conspiracy conviction (Count One), eighty-four (84) months for the first § 924(c) conviction (Count Five), and eighty-four (84) months for the second § 924(c) conviction (Count Six), all to be served consecutively.